Morris Slifkin, J.
Plaintiff in the above-entitled action seeks a judgment against the defendant directing that the defendant pay to plaintiff support for plaintiff and for the infant daughter of the parties.
Before proceeding to the determination of the merits of the action, the court deems it advisable to review the procedural steps taken in this action since those steps, to some degree, serve to outline the parameters of the issues to be determined by the court.
The original complaint of the plaintiff sought the following relief: (1) a judgment of separation; (2) custody of the infant daughter of the parties; (3) support and maintenance for the plaintiff and the infant child; (4) counsel fees; and (5) title to 50% of the ownership of Rosner Supply Corporation and Daro Realty Corp. The relief above set forth was based upon three causes of action, the first sounding in adultery, the second sounding in abandonment, and the third sounding in cruel and inhuman treatment.
Plaintiff then moved this court for an order granting her leave to serve an amended complaint in which the only change from the original complaint was to eliminate that portion of the prayer for relief demanding a judgment of separation. On appeal by plaintiff from an order of this court denying such relief (Walsh, J.), the Appellate Division, Second Department, reversed and granted plaintiff’s motion (42 AD2d 597). Thereafter, plaintiff served an amended complaint which reasserted and repeated the three causes of action set forth in the original complaint and asserted the same prayer for relief except that in lieu of the judgment for separation, plaintiff demanded judgment that defendant provide suitably for the maintenance and support of the plaintiff and the maintenance and support of the infant daughter of the parties; ;
At the outset of the trial, the defendant moved to strike certain allegations of the amended complaint on the ground that they were no longer material and necessary to assert a cause of action against defendant for an order of support and *606 to strike certain other allegations of the complaint on the ground that the facts therein set forth and the prayer for relief based thereon were improper and no longer available to the plaintiff since the present action sought an order of support only and no longer sought matrimonial relief (cf. Schachter v Massachusetts Protective Assn., 30 AD2d 540). The court granted defendant’s motion holding that the prayer for relief seeking a judgment for support only, limited the present action to the aspect of a proceeding for an order of support under article 4 of the Family Court Act based upon the rules of Matter of Seitz v Drogheo (21 NY2d 181) and Kagen v Kagen (21 NY2d 532).
The court also granted defendant’s motion to strike the allegations from plaintiff’s amended complaint as set forth in (j) and (k) of paragraph Fourteenth thereof and as well as that portion of the prayer for relief seeking determination of the claim of plaintiff against defendant concerning ownership of certain shares of stock on the ground that such relief would be available only in a matrimonial action under the provisions of section 234 of the Domestic Relations Law and was not available to the plaintiff in a proceeding under the provisions of article 4 of the Family Court Act. (See Matter of Borkowski v Borkowski, 38 AD2d 752.)
The allegations of the amended complaint permitted to stand under the ruling of the court are those set forth in paragraphs First, Second, Third, Fourth, Fifth, Sixth, and subdivision (i) of paragraph Fourteenth. Simply stated, the said allegations set forth the jurisdictional facts, the marriage of the parties, the children of the parties born of the marriage, and the claimed refusal, failure and neglect of the defendant to adequately and suitably support and maintain the plaintiff and the infant daughter of the parties.
• The court now turns to that aspect of the motion to dismiss made by defendant which is based upon the claimed insufficiency of the allegations concerning the failure to support plaintiff and the child of the parties as set forth in subdivision (i) of paragraph Fourteenth of the amended complaint. The court does not believe that the case of Matter of Steinberg v Steinberg (18 NY2d 492), requires the incorporation by reference into Family Court practice of the rules of pleading relating to separation actions in the Supreme Court. The decision above cited holds simply and squarely that the substantive law relating to the granting or withholding of ali *607 mony or support in a matrimonial action pursuant to the provisions of section 236 of the Domestic Relations Law also govern and control the granting or withholding of support by a Family Court proceeding under article 4 of the Family Court Act. This court does not find that the decision cited compels the carrying over of pleading practices which exist in the Supreme Court in separation actions.
The court holds that the allegations set forth in subdivision (i) of paragraph Fourteenth of the amended complaint are sufficient. The language used corresponds closely to that used in 22 NYCRR Appendix B-2, form 4-4. The mandate of the Judicial Conference has been substantially met in the present pleading and defendant’s motion to. dismiss for failure to properly plead is denied.
The court must now deal with the standards to be applied by the court in fixing the amount of support to be awarded by the court in this action. Specifically, the court is called upon to determine whether there is a qualitative difference in those standards governing the amount of support as those standards may be fixed by the provisions of section 412 of the Family Court Act and those fixed by the provisions of section 236 of the Domestic Relations Law. An outstanding authority in the field of matrimonial law points out that the function and purpose of alimony awarded under section 236 of the Domestic Relations Law is not necessarily the same as that of support awarded under the Family Court Act. (2 Foster-Freed, Law and the Family, § 22:38.) The distinction is made that in the Family Court, the prevailing practice stresses a "needs and means” standard, that is, the actual needs of the wife and the financial ability to pay of the husband. The authority above cited summarizes their impression of the present state of the law in the following language: "Although it is difficult to generalize, ordinarily an award of permanent alimony, where possible, reflects an amount which will enable the wife or former wife to maintain her accustomed social and economic status; support ordinarily is more closely related to means and may be such as to permit her to exist on a more modest scale than that enjoyed while the parties lived together”. (2 Foster-Freed, Law and the Family, § 22:39; see, also, Ploscowe, Foster and Freed, Family Law Cases and Materials, p 758.)
The foregoing observations were predicated upon the authors’ observations of the end result of proceedings in the Family Court and in the Supreme Court.
*608 The court concurs, however, with the authors above cited in their ultimate conclusion that the differences in the observed results represents a distinction of appearance rather than of substance. This court agrees that these differences, to the extent that they do exist, represent the differences which exist in the legal arena where the parties meet as well as the economic status of the parties involved. ■
This court, after noting the language similarities between section 412 of the Family Court Act and section 236 of the Domestic Relations Law, reaches the conclusion that the standards to be applied in determining the amount of support in a Family Court proceeding under article 4 are the same as those set forth in the section of the Domestic Relations Law above cited and as the provisions of that section have been interpreted by the courts of this State in fixing support in actions prosecuted in the Supreme Court.
The nub of this conclusion is that the court must consider not only the present needs of the wife, but also the preexisting standards of living which existed prior to separation to the end that the amount of support awarded should enable the wife financially to maintain the same level of living standards as the parties enjoyed while living together. To do otherwise would serve to penalize the wife whose needs, at the time of the hearing, may have been drastically reduced by virtue of the fact that income has been no longer available from her husband for the purpose of meeting the cost of those needs.
The standards which serve to define the award of alimony had been recently spelled out in the case of Kover v Kover (29 NY2d 408). Not only must the court consider the manner in which the parties have lived and the financial ability of the husband to furnish means of support (p 414), but the court must also under the mandate of section 236 of the Domestic Relations Law as amended, consider the length of time of the marriage, the ability of the wife to be self-supporting, the circumstances of the case and of the respective parties. Thus, the Court of Appeals summarizes the factors to be taken into consideration. These include the financial resources of each of the parties and the established standard of living of the parties prior to separation, the age and health of the parties, and the wife’s ability to be self-supporting (pp 415, 416).
The scrutiny by the court of the preceding factors is limited by the stipulation placed on the record by the defendant that *609 he has the financial ability to pay any reasonable order of support which may be directed by the court. The effect of this stipulation is to preclude any inquiry by the court or during the course of the trial into the finances of the defendant. (Manheim v Manheim, 29 AD2d 532; Matter of Ohrstrom v Ohrstrom, 31 AD2d 797.)
The court therefore must consider the other factors cited by the Court of Appeals in Kover, particularly to determine those factors which constituted the preseparation standard of living of the parties and the present cost of maintaining those standards.
The parties to this action were married on June 21, 1936. Three children were born of that marriage, all of whom have now attained their majority, the youngest of which, the daughter Vikki having reached her majority on February 17, 1974. The parties lived together until April 15, 1969 at which time the defendant left the marital home. The plaintiff is presently 59 years of age and the defendant is presently 60 years of age.
For a period of time commencing shortly after their marriage and continuing to the time that defendant left the marital home, both of the parties devoted their major energies to the creation and the improvement of a retail business which grew and prospered from a small beginning to a point where, at the time of the separation above referred to, the business employed some 35 to 40 employees. This growth and development must be ascribed to the joint effort and time spent by both of the parties at their place of business. The testimony is undisputed that their working day began no later than 9:00 a.m. and continued on a six-day week basis until a time of approximately 9:00 p.m. Until relatively recent years, the time and the physical and emotional resources of both parties were devoted almost exclusively to their business interests.
At the beginning of their married life, the parties shared a three-room apartment and then bought a one-family home in the City of Yonkers. As time went on and their family grew, there were added two upstairs bedrooms with two bathrooms. This one-family house was the marital home of the parties and still is the home of the plaintiff.
The limitations that time imposed on the parties by their business activities, until recent years necessarily limited the outside interests of the parties. In recent years, however, and *610 subject to the qualification hereinafter set forth, each of the parties enjoyed separate vacations, purchased a 36-foot boat used for. their joint pleasure and entertainment, entertained at home, and on occasion, went to dinner at excellent restaurants both in the county of Westchester and the City of New York. They became members of a private club in the City of Yonkers. The qualification above referred to relates to the determination by the court to treat as part of the preseparation standard of living, those vacation trips which were paid for from the funds of the parties. The court excludes from its consideration those vacations and trips which represented bonuses or premiums advanced by suppliers based upon the retail record of the business operated by the parties and to which no substantial contribution of expenses was made by the parties.
The plaintiff maintained charge accounts at many of the excellent retail stores in and around the county of Westchester for the purchase of clothing and apparel and other women’s necessities both for herself and for the then infant daughter of the parties.
The record further discloses that there was available to the plaintiff and to the defendant as well, certain "cached” cash representing either moneys made available from the cashing of a bonus check from a supplier or from sales at the place of business which did not pass through the customary invoice procedures. The court does not regard the availability or use of this cash by the plaintiff as in any constituting an additional form of compensation paid to the plaintiff for her services from the business. To the extent required, the court treats this cash made available to the plaintiff as done with the voluntary acquiescence and knowledge of the defendant and may be deemed a gift.
The mode of living of the parties cannot be characterized as luxurious. The court would describe the parties as having maintained a comfortable upper-middle class mode of living and entertainment. (See Shapiro v Shapiro, 22 Misc 2d 795, 797.)
The burden of proof to establish the cost of those factors constituting plaintiff’s claimed preseparation standard of living is on the plaintiff. Pursuant to stipulation, at the outset of the trial, plaintiff admitted into evidence her affidavit sworn to the 17th day of January, 1974 on the form prescribed by *611 the rules of the Appellate Division, Second Department (see 22 NYCRR 699.11), on the understanding and condition that the facts therein set forth would constitute the testimony of plaintiff on direct in response to questions asked of her concerning the particular items set forth but without a concession on the part of the defendant as to the truth of those statements and without limitation as to the right of defendant to cross-examination.
This affidavit summarizes and totals the gross cost of plaintiffs needs and expenses in accordance with the pre-existing standard of living at the sum of $1,220 per week which included the sum of $300 representing allowance for income taxes. At trial and upon cross-examination, the plaintiff corrected the sum of the items to total $740 per week plus $300 a week for estimated income taxes. The cross-examination further disclosed that the contents of the affidavit sworn to January 17, 1974 were prepared in joint consultation with her attorney and without furnishing him any canceled checks, bills or other documentary evidence upon which to base the figures set forth in the affidavit. Further, when faced with her affidavit sworn to May 24, 1971 submitted in connection with her motion seeking temporary alimony, support and counsel fees, which disclosed needs totaling $545 per week, plaintiff was unable to reconcile these figures and offered no documentary or other proof in support of the tabulations set forth in the affidavit except a comment concerning the increase in the cost of living since the date of the original affidavit. The court finds that explanation inadequate and determines that plaintiffs estimates of her needs were exaggerated and not supported by the testimony elicited on behalf of the plaintiff in this action (see McCracken v McCracken, 44 AD2d 793).
To reach a determination as to the present cost of the needs of the plaintiff, the court has carefully considered those items set forth in each of the affidavits furnished by the plaintiff hereinabove referred to and reaches the conclusion that the present cost of plaintiffs support based upon the preseparation standard of living of the parties is at the rate of $395 per week, or $20,540 per year. Against this sum, there is available to the plaintiff, exclusive of the weekly sum paid to plaintiff from the business, income received by the plaintiff as disclosed by her 1973 Federal income tax return in the form of dividends of approximately $2,000 per year and interest at the rate of $1,100 per year. The balance of $17,440 represents the *612 funds required to be made available to the plaintiff to be used by her for her support, or the sum of $335 per week.
The function of alimony is to provide cash funds available to plaintiff to be disbursed for her needs. Therefore, there must be added to the foregoing weekly sum of $335, estimates representing both Federal and State income taxes and the court fixes the gross sum required to be paid by defendant to plaintiff for her support at the sum of $395 per week.
To the extent that payments to plaintiff from the business continue after the entry of a decree herein, there would be charged against the above sum the $150 per week being paid to her, leaving a balance of $245 per week. In addition, the foregoing computations reflect the present practice of providing plaintiff with Blue Cross, Blue Shield and major medical coverage by the business. To the extent that the latter may be discontinued, a further adjustment would be required in order to reflect the medical and dental care which plaintiff might anticipate and which would have been paid for or reimbursed by the insurance.
The court has considered the employability of the plaintiff. Concededly, plaintiff has had a varied and broad experience in the administration operation of the business, both as an executive and as a person experienced in the internal operations of the business itself. Nevertheless, at her age of 60, the court seriously questions the availability of employment to the plaintiff. Absent such proof, this court cannot require that plaintiff be charged with estimated earnings to mitigate the burden of her support.
The court now turns to the problem of the effective date of the award of support made herein. This court has the power to make an award of support effective as of the date of the institution of the proceeding now before it. (Cf. McCarthy v McCarthy, 143 NY 235; Oppenheimer v Oppenheimer, 11 AD2d 1006; Zolinsky v Zolinsky, 17 AD2d 158; Gussack v Gussack, 11 AD2d 770.)
At the outset, plaintiff in her complaint, sought matrimonial relief in the form of a decree of separation to which would attach an award of alimony and support. As this court has herein decided, the order of the Appellate Division, Second Department, permitting plaintiff to amend her complaint to assert her cause of action for an order of support only, completely changed the theory of her case and in effect *613 instituted a new cause of action under article 4 of the Family Court Act.
Had plaintiff elected to discontinue her separation action rather than seek an amendment of her complaint, she could then have instituted an article 4 proceeding in the Family Court of Westchester County. So long as the separation action was actually pending, the jurisdiction of the Family Court could not be invoked to award support (Matter of Locasto v Locasto, 45 AD2d 712). Absent the decision of the Court of Appeals in Seitz v Drogheo (21 NY2d 181, supra) and Kagen v Kagen (21 NY2d 532, supra), holding that the Supreme Court has concurrent jurisdiction with the Family Court to entertain article 4 support proceedings, plaintiff would have been obliged, once she elected to withdraw her separation action, to initiate a new proceeding in the Family Court. If she were in fact compelled to bring such a new proceeding in the Family Court, she could not argue in that court that an award of support could be made to commence on a date earlier than the date that her support proceeding was actually instituted. By a parity of reasoning, she cannot presently be heard to argue that her article 4 Family Court proceeding relates back to the commencement of her now defunct and abandoned separation action. The fortuitous circumstances permitting plaintiff to bring a support proceeding in Supreme Court does not change the rule that a court is without power to direct an award of support be made payable retroactively to a date prior to the date of the commencement of the action (Miceli v Miceli, 285 App Div 1187). Nor does the statement by Mr. Justice Walsh in his decision in denying the motion for temporary alimony and other relief and referring the request for temporary alimony and counsel fees to the trial court “which they make a permanent alimony award nunc pro tunc as of the date of this motion” serve to assist plaintiff. That order was made at a time when plaintiff’s matrimonial action was still pending, some two years prior to her commencement of the proceedings now before this court which the court has characterized as an article 4 Family Court proceeding for support.
The ultimate end of the foregoing rationale \,ould be the conclusion that, subject to the discretion of the court, plaintiff might be entitled to a retroactive award of support to the date of the order of the Appellate Division, Second Department, June 18,1973.
In matrimonial proceedings, this court sits as a court of *614 equity and has the discretionary power to require the payments of permanent alimony to begin as of the time of the commencement of the action, but such discretion should be exercised by the court cautiously and with a proper regard for the circumstances in each particular case (Mittman v Mittman, 263 App Div 384, 386). Two aspects of the factual situation in the present case are necessarily involved in the exercise of discretion by the court. The conduct and trial of this case has been the end result of a long drawn out matrimonial battle of attrition. Plaintiff, acting for what she deemed to be her own best interests, retained one set of counsel, discharged that counsel and then hired her present counsel. The delays occasioned in this case have been due not only to the volume of paper work engendered by the diligence of counsel, but also by tactics on behalf of the plaintiff which served to substantially delay the trial. It is this court’s recollection, to the extent that it has been involved in this case, that in every instance, adjournments were requested by the plaintiff except in one instance in January of this year where the defendant requested an adjournment. This court made an effort to set down for trial the issue of support on March 5, 1973, marking the case peremptorily against both sides. In its letter to respective counsel at that time, the court felt that the issues of alimony and support had to be tried in any event regardless of the outcome of the appeal to the Appellate Division. Plaintiff’s counsel insisted that the trial await the outcome of that appeal and obtained a stay by the Appellate Division of the prosecution of the trial until the appeal was determined.
Where a plaintiff was dilatory in the prosecution of the action, the Appellate Division did not hesitate to make the effective date of an award of alimony the date of judgment entered in the Supreme Court (Weltman v Weltman, 30 AD2d 658). However, for the reasons hereinafter set forth, the court elects to adopt as the effective date upon which support is to be paid by defendant to plaintiff, the first day of the trial before the court, to wit, January 28, 1974.
This conclusion of the court is further buttressed by the fact that in addition to the delays occasioned by plaintiff, the foregoing determination that the award of support be retroactive to the first date of trial is supported by a finding that the plaintiff had and has substantial capital assets which have not been seriously depleted from the time that her first applica *615 tion was made to this court for temporary alimony and counsel fees. Where the court in making its award of support considered the substantial assets owned by plaintiff both at the time of the commencement of the action and at the time of the trial of the action, and conceding that a portion of those assets may have been required to be expended up to and pending trial, the court will not hesitate to make the award retroactive not to the date of commencement of the action, but to the date of the granting of a trial preference and that determination was held not to constitute an abuse of discretion by the trial court (Lowe v Lowe, 28 AD2d 212).
Just before the separation between the parties occurred in January, 1969, plaintiff had at that time securities worth about $115,000; cash in savings banks in the amount of $22,000 and was the owner of the former marital home of the parties in Yonkers which had been turned over to her by the defendant in 1961. On cross-examination, there was elicited the fact that plaintiff at the end of May, 1971 had $25,000 in savings or $3,000 more than she had when she and her husband separated. Still later in January, 1972 or three years after separation, she had $27,000 in savings, consisting of $12,337 in savings deposits and a $15,000 savings certificate, or $5,000 more than she had at the time of her separation. One year after the last date, in January, 1973, plaintiff testified that she had approximately $19,600 in savings consisting of $4,650 in the bank and the same $15,000 savings certificate or only about $2,400 less than she had four years earlier at the time of the separation.
As plaintiff’s testimony developed, it established that on January 11, 1973, four years after the parties’ separation, the plaintiff had $21,042.25 in savings, approximately the same amount she had four years earlier when the parties separated.
Commencing in March, 1973, plaintiff began to make a periodical series of withdrawals. The proof shows that she used these funds to purchase other assets, to make a substantial loan to one of her sons to put him in business, to buy life insurance policies in the face amount of $50,000 for each of the parties’ children, and to pay the attorneys and other expenses related to this litigation. In substance, plaintiff did not liquidate her assets to obtain money upon which to live, but simply rearranged her assets in the form outlined above.
This conclusion is born out by a review of plaintiff’s interest *616 income from all sources for the years 1970 through 1973 inclusive as follows:
1970 — $1,782
1971 — $1,872
1972 — $2,457
1973 — $1,691
It is significant to the court to observe that the figures for 1970 and 1973 are almost the same.
With relation to the securities to the income derived from plaintiff’s securities, for the years 1970 through 1973 inclusive, the following dividend income was received by plaintiff:
1970 — $2,846
1971 — $2,365
1972 — $2,468
1973 — $2,012
Although plaintiff testified that the present value of her stock was about $64,000, the presence of the same dividend income compels the conclusion that the reduction in net worth can be attributed to the general economic conditions in the stock market and not by reason of invasion of those assets by plaintiff for her living expenses.
Further, plaintiff is presently the owner and holder of $60,000 worth of life insurance on defendant’s life. Although originally the cash surrender value of this policy was estimated to be at $35,000 or $38,000, then corrected to $24,000, plaintiff finally testified that the present value of this policy by reason of loans made against the policy was in the sum of $14,000.
Finally, pursuant to an understanding reached in open court between counsel and the court, there has been submitted to the court as an exhibit in this case, a letter from the Marks Pension Service indicating that the cash value of plaintiff’s interest in the pension fund maintained by the Rosner Supply Corporation is presently $6,838.
As observed in Lowe (28 AD2d 212, supra), these financial factors as well as the delay in the prosecution in the trial of this case placed at plaintiffs door, compel the conclusion by this court that the effective date of the award made herein will be the first day of trial, to wit, January 28, 1974.
Against the sum to which plaintiff is entitled from the date fixed, defendant is entitled to set off all payments made to plaintiff either by defendant or by the business corporation *617 since the effective date of the award set forth. The balance of the support due plaintiff for the period from January 28, 1974 to judgment as so adjusted shall be paid by defendant to plaintiff as follows: $2,500 within 60 days after service upon the attorney of defendant of a copy of the judgment to be entered herein with notice of entry and $1,000 on the first day of each and every month thereafter until said sum or any balance hereof has been fully paid, without interest. The foregoing sum shall be paid without diminution of the support hereinabove ordered, said support to be made in weekly installments in the amounts stipulated in this decision, the first payment to be made within seven days after the service of the copy of this judgment with notice of entry upon the attorney for the defendant and a like sum each week thereafter.
No award is made for the support of Vikki, the former infant. She attained her majority on February 17, 1974. Defendant contributed to her support and education and no further support is required from defendant for the 20-day period involved.
The last issue to be determined by the court in this action relates to the application made by the present attorney for the plaintiff for counsel fees. Counsel have stipulated to the court that its determination may be based upon the affidavits submitted by counsel for the respective parties without the necessity of any further hearing.
Heretofore, this court has characterized an instant action as a proceeding under article 4 of the Family Court Act for an order of support. In such a proceeding, this court may make an award of counsel fees to the attorney representing the wife (Family Ct Act, § 438). By reason of the rationale advanced by the court as above set forth, the award of counsel fees in a Family Court proceeding is nevertheless governed by the decisional and statutory law relating to awards of counsel fees made under the provisions of the Domestic Relations Law. It is to be noted by reason of the change in relief sought from matrimonial relief to a support order, plaintiff’s counsel is limited to compensation for those services rendered in the article 4 proceeding only. (Sweet v Sweet, 45 AD2d 1050.)
In determining the amount of the counsel fees to be paid by defendant to the attorney for the plaintiff, this court holds that the provisions of subdivision (a) of section 237 of the Domestic Relations Law and the cases decided thereunder *618 control the determinations to be made pursuant to the provisions of section 438 of the Family Court Act. Subdivision (a) of section 237 of the Domestic Relations Law provides that, "the court may direct the husband * * * to pay such sum or sums of money to enable the wife to carry on or defend the action or proceeding as, in the court’s discretion, justice requires having regard to the circumstances of the case and of the respective parties.” Under the circumstances of this case, the court must determine the gross value of the services rendered by plaintiffs attorney on behalf of the plaintiff in the article 4 proceeding prosecuted before the court and then set off as against the value of such services as determined, the amount paid to the said attorney by the plaintiff on retainer. In this proceeding, this court may not direct the defendant husband to reimburse the plaintiff wife for all or any part of the retainer advanced by her to her attorney. In Kann v Kann (38 AD2d 545), the Appellate Division, First Department, held that counsel fees are awarded in a matrimonial action to insure that an indigent wife has legal representation and further that if she is able to pay her counsel, no award may be made. In Winter v Winter (39 AD2d 69), the same court specifically held that the Kann decision bars any consideration of possible reimbursement by the husband against the retainer fee advanced by the wife to her attorney. This determination was squarely presented to the Court of Appeals, the appellant urging that the Appellate Division erred when it refused to direct that she be reimbursed for moneys expended for counsel fees. The Court of Appeals affirmed the determination of the Appellate Division, First Department, without opinion (31 NY2d 983, 984).
Although this court shares the apprehension of the dissenting Justice in the Appellate Division, First Department decision in Kann, as well as the reservation made by the court in Winter v Winter (68 Misc 2d 654, 657), this court is bound by the decision of the Court of Appeals and holds that it cannot direct reimbursement to the plaintiff of all or any part of the moneys advanced by her to her attorney. The basis for such reimbursement would be an action by the plaintiff against the defendant for necessaries required to be furnished to the plaintiff and would be outside the ambit of this decision.
The court must now examine the merits of the application made by counsel. His affidavit discloses that heretofore, the plaintiff paid to the said attorney the sum of $7,500. The *619 affidavit of counsel states that such payment was not for services rendered solely in connection with this "matrimonial action”, but also represented services rendered in the constructive trust proceeding relating to the two corporations created during the course of the business operations of these parties. A scrutiny however of the detail of the affidavit fails to disclose any method of determining what, if any, part of those services were not involved in the instant litigation. The court must proceed upon the assumption that the amount paid by plaintiff to her counsel was for his services to be rendered to the plaintiff in this proceeding.
Briefly summarized, the legal services enumerated in the affidavit generally encompass the examination of the files given to him by prior counsel, examination and briefing of the relevant law, the making of an application to amend the prayer for relief in the complaint, a successful appeal from the order of the lower court denying such motion and thereafter, the preparation of this case for trial and the representation of plaintiff during the course of the trial.
Further, the court has carefully examined the affidavit of services of the attorney for the plaintiff as well as the opposing affidavits submitted by the attorney for the defendant relating to the nature of the services rendered, the skill, experience and background of counsel, the difficulty of the issues of fact and law involved in this case, as well as the time actually spent on trial. The court determines that the gross fair value of such services rendered by the attorney for the plaintiff was the sum of $8,500.
The plaintiff having heretofore paid her attorney the sum of $7,500 on retainer, the defendant is directed to pay to the said attorney for the plaintiff within 30 days after the service upon plaintiff’s attorney of a copy of the judgment to be entered herein with notice of entry, the sum of $1,000.
In making the foregoing determination, this court does not intend to pass upon the pending application by plaintiff’s former attorneys for an award representing the fair value of their services rendered by them to the plaintiff over and above the moneys heretofore paid, if any. The liability, if any, of the defendant for any part of such fee is clearly not before this court and any reimbursement to be sought by plaintiff from defendant for such fee would necessitate an action against defendant based upon the theory of necessaries furnished to plaintiff.
*620 Submit judgment on notice.