In the Matter of the Application of MODESTO BERARDINI, One of the Executors and Trustees under the Last Will and Testament of MICHAEL BERARDINI, Deceased, and Also One of the Legatees under Said Will, for a Discovery as to Property Withheld from the Estate of MICHAEL BERARDINI by JOHN J. PULLEYN and Others. PHILIP BERARDINI and Another, Appellants; MODESTO BERARDINI, as Executor and Trustee, Respondent.

Second Department, May 19, 1933.

*Leighton Lobdell* [*William H. O'Brien* with him on the brief], for the appellants.

*Richard J. Mackey*, for the respondent.

Davis, J. The controversy involves twenty shares of stock of the M. Berardini State Bank which the respondent claims are a part of the estate of his deceased father. The appellants assert that the shares were given to them at about the time the bank was organized.

Michael Berardini, the testator, was for several years prior to his death the owner of several private banks in this country and one in Naples, Italy. In 1916 he incorporated the bank in New York as a State bank with a capital of $150,000, consisting of 1,500 shares. In form he issued 40 of these shares to four dummy directors who took and claimed no title thereto. The remaining 1,460 shares were issued in his own name. A little later he divided his certificate and issued 10 shares each to his three sons, Philip, Modesto and Michael, Jr. They were all made directors. Philip was made vice-president and manager of the bank. After Michael, Jr., had returned from the war and had gained some banking experience elsewhere, he became an employee of the bank and later an officer. Modesto was connected with the bank at Naples and never had any active interest in the New York bank. He surrendered his shares in 1923. The certificate was admittedly never in his possession until he signed the transfer.

In 1922 the father went to Italy, remaining there until he died on January 13, 1924. Philip was left in charge of the New York bank. The will of the father appointed the three sons and John J. Pulleyn as executors and trustees. The will was admitted to probate in Richmond county on May 24, 1924, and letters testamentary were issued.

On March 6, 1930, Modesto instituted this proceeding for discovery, claiming that his brothers illegally retained the ten shares each held, which actually belonged to the estate. The two brothers claimed title by virtue of a gift. That was the issue sent to a hearing before a referee by the former surrogate. There had been trouble and litigation between Modesto and his brothers before, which fact we deem of some significance in view of the delay in instituting the proceeding until nearly six years after the issuance of letters testamentary to him and the others.

After a long trial, the referee made a report containing findings in favor of the two brothers. This report the present surrogate rejected and made a decree in favor of the petitioner, holding that there was no valid gift of the shares. The two brothers have appealed from that decree.

Much incompetent evidence was admitted on the hearing. Certain witnesses were permitted to testify that after the shares had been issued to the brothers the testator had said in substance that

the shares were given to the two sons as a formality only, and that the shares were his property. This evidence was incompetent and hearsay. The declarations of a deceased person in his own favor are no more competent than those of a living person, particularly when they relate to a past event such as making a gift; and they are unavailing to divest a title. (*Lowery* v. *Erskine*, 113 N. Y. 52; *Lent* v. *Shear*, 160 id. 462; *Gick* v. *Stumpf*, 204 id. 413; *Marrow* v. *Moskowitz*, 255 id. 219.) The surrogate gave no intimation that he rejected this evidence in finding for the respondent.

The petitioner called the two brothers as witnesses and thereby in some degree vouched for their credibility. On direct examination Philip testified that the certificate came into his possession in January, 1917, when he first went with the bank; that it was given to him; and that it never went back into his father's possession, but remained with him until several years after his father's death, when he indorsed and transferred it for new shares issued to him at the time the capital stock of the bank was increased. Michael, Jr., as petitioner's witness, gave similar testimony in respect to his shares.

Called as a witness in his own behalf, Philip was eventually permitted to testify as to other details of the gift. The father spoke to him about coming to work in the bank; said that he wished to be relieved of all responsibility; gave Philip the stock and made him vice-president; and gave ten shares to Michael, Jr., when the three were together. While this added little to the testimony he had already given as petitioner's witness, it is argued now that the evidence was incompetent under section 347 of the Civil Practice Act. We do not share that view. The petitioner had opened the lips of the witness and waived the benefit of the statute. (*Cole* v. *Sweet*, 187 N. Y. 488.) The spirit and the purpose of the statute is equality and to prevent undue advantage (*Wadsworth* v. *Heermans*, 85 N. Y. 639, 641), and the petitioner could not force the witness to tell a part of the transaction and then prevent him from telling the whole.

The evidence of the two brothers is corroborated by the testimony of Mr. Pulleyn, a banker and the other executor and trustee. He testified that he was an adviser of the father and that the latter discussed with him the affairs of the bank and of his sons. In a conversation respecting the qualifications of directors, the father said that he had given Philip and Michael ten shares outright to qualify them as directors. In view of their relation and the duties the sons were about to assume, the probabilities as well as the testimony indicate that this is true.

The surrogate was of the opinion that the evidence of Pulleyn

was incompetent under the provisions of section 347 on the ground that he had some interest in the matter as an executor and might be held delinquent for not seeking to recover the shares if the gift was invalid. We do not agree. To disqualify a person as a witness he must have some present, certain and vested interest in the subject of controversy — not one that is uncertain, remote or contingent. The test is, whether the witness will gain or lose by the direct legal operation of the decree or judgment. (*Connelly* v. *O'Connor*, 117 N. Y. 91; *Laka* v. *Krystek*, 261 id. 126.) By this test the witness was not disqualified and the evidence was competent.

There was dispute between the parties as to where and in whose custody the certificates were kept and to whom the dividends were paid. These questions of veracity were primarily for the referee to determine. He saw and heard the witnesses. (*Nottingham* v. *Nottingham, No. 1*, 209 App. Div. 459, 461.) There is nothing to indicate that he erred in his estimate of the truth. The weight of evidence and the probabilities support the findings he made. The incompetent evidence admitted was in favor of the petitioner. A letter from Philip to his father, written in December, 1922, containing alleged admissions to the effect that all the stock belonged to the latter, must be read in the light of the purpose of the letter dealing with a proposed increase of the capital stock of the bank in view of new or pending legislation imposing a heavy tax on the surplus. The expressions were casual in the course of a long informative letter and may well be interpreted to refer to the 1,480 shares owned by the father, comprising practically all of the shares. So read, the admission loses much of its probative force in the face of positive evidence of gift.

We have here the elements of a valid gift — the intent, the actual delivery and the acceptance, with the purpose of management intrusted on one side and performance of the duties on the other. (*Young* v. *Young*, 80 N. Y. 422, 430; *Beaver* v. *Beaver*, 117 id. 421.)

For the reasons stated we reach the conclusion that there was a valid gift of the stock to the two appellants. It follows that the decree should be reversed on the law and the facts, with costs, and the matter remitted to the surrogate to enter a decree, with costs, declaring that the shares of stock in question were respectively the property of the brothers Philip and Michael, Jr., having been received by them as a valid gift, in accordance with the opinion and the decision of the referee, the costs to appellants being payable out of the estate.

The findings of the surrogate that there was no proper and valid gift of the stock and that said stock was the property of Michael

Berardini at the time of his death are reversed, and the findings of the referee are confirmed and approved.

LAZANSKY, P. J., YOUNG, HAGARTY and CARSWELL, JJ., concur.

Decree of the Surrogate's Court of Richmond county reversed on the law and the facts, with costs, and the matter remitted to the surrogate to enter a decree, with costs, declaring that the shares of stock in question were respectively the property of the brothers Philip and Michael, Jr., having been received by them as a valid gift, in accordance with the opinion of the decision of the referee, the costs to appellants being payable out of the estate. The findings of the surrogate that there was no proper and valid gift of the stock and that said stock was the property of Michael Berardini at the time of his death are reversed, and the findings of the referee are confirmed and approved. Settle order on notice.