Chief Judge Fuld.
The plaintiff, claiming to be its owner, brought this action to recover possession of a sculpture which, shortly after her husband’s death, had been delivered to the Guggenheim Museum by his executrices. Judgment has gone against the plaintiff and, on this appeal, here by our leave, the question to be decided is whether a husband’s later payment for an oí jet d’art purchased by his wife is, without more, sufficient to vest title in the husband.
On December 7, 1955, Parke-Bernet Galleries held an auction and among the works advertised for sale was a marble head by Constantin Brancusi, a great modern sculptor, entitled “ The Muse (Bepose).” Both the plaintiff and the artist were born in Bumania and hailed from the same town. They had been good friends for many years and conversed in their native tongue when they were together. Indeed, he had given her *360 lessons in sculpturing.[1] Intent on acquiring her friend’s statue, she attended the auction and bid on it. Her bid of $7,000 was high, the piece was knocked down to her, she was listed on Parke-Bernet’s records as the purchaser and the invoice was rendered to her for the amount of her bid.
When Mr. Bulova learned of his wife’s purchase of the sculpture and the price paid for it, he discussed the matter with a close friend and business associate. He testified that Mr. Bulova was “upset” and expressed amazement and disbelief at the thought that anybody would pay "so much for a piece of stone like that ”. But, he added, "if she [his wife] likes it, she can have it,” and two weeks after the sale he sent his check to Parke-Bernet for the amount of his wife’s bid. The sculpture a marble head of a girl was thereupon delivered to the Pierre Hotel, where the couple lived, and placed on a pedestal in the foyer of their apartment.
- Some two years later, in October, 1957, the couple had a serious quarrel and Mr. Bulova had the plaintiff physically evicted from their home. She was able to take with her only such personal belongings as could be packed in an overnight bag. However, the plaintiff’s attorney wrote to the husband a few weeks later, demanding that he deliver to her the Brancusi “ marble,” as well as several other works of art which were still in the apartment. The demand was ignored.
Mr. Bulova died on March 18, 1958. He left a will in which he discharged and released his wife from any indebtedness to him; his two sisters, Mrs. Henshel and Mrs. Guilden, were named as executrices of his estate. On March 28, 10 days after his death and about two months before her appointment as executrix, Mrs. Guilden delivered the Brancusi to the Guggenheim Foundation as a “ gift.”
Shortly after the probate of the will, the plaintiff filed a formal claim against the estate, demanding delivery of her “ [p]ersonal * * * effects” in the possession of the deceased prior to his death. The claim was later amended to explicitly include the Brancusi as being among such “ [p] ersonal effects ”. Upon rejection of her claim, the plaintiff instituted the present suit, alleging two causes of action. The first is *361 directed against the two executrices, the second against the Foundation, and in both she seeks a judgment declaring her to be the owner of the sculpture and entitled to its immediate possession.[2]
Upon the trial, the defendants placed principal reliance upon an alleged presumption that the spouse who pays for personal property, particularly for furniture and household articles, is its owner. On the other hand, the plaintiff maintained that she had already acquired the right to the sculpture when her bid was accepted by the auctioneer and that her husband’s subsequent payment of the bill did not divest her of that right. In addition, she argued, even if her husband were to be considered the purchaser of the piece, the fact that he permitted it to be transferred in her name and delivered to her created a presumption that a gift was intended. The trial court found for the defendants, concluding that ‘ ‘ title to personal property resides in the party supplying the consideration for the same.” The Appellate Division affirmed the resulting judgment in favor of the Guggenheim Foundation—the only defendant before it — and, as indicated, we granted leave to appeal.[3]
Although there may be some instances where, as the courts below held, title to personal property may be presumed to vest in the person furnishing the consideration, this is not the rule where the purchase is actually made pursuant to a contract of sale entered into by another for his or her own benefit. To hold otherwise might well cause confusion whenever a buyer looks to another party to finance his purchase. In the present case, it *362 is our conclusion, based on the evidence adduced, that, as a matter of law, the plaintiff had contracted to purchase the statue at the time her bid was accepted by the auctioneer and that it became hers regardless of the source from which she obtained the funds to pay for it.[4]
In reaching this result, we rely on the undisputed fact that it was the plaintiff who, on her own initiative and without any prior arrangement with her husband, attended the auction and bought the statue. The bid card was signed by her, the price was charged to her account and the invoice was rendered and sent to her. When the auctioneer accepted her bid, the sale was complete and the demands of the Statute of Frauds fully satisfied by the auctioneer’s memorandum (Personal Prop. Law, § 31, subd. 6 [now General Obligations Law, § 5.701, subd. 6]). In other words, before her husband became involved in any way in the transaction, the gallery had become fully obligated to deliver the statue to the plaintiff, and she alone was liable for the payment of the purchase price.
Our decision might have been different if there had been any indication in the proof that the plaintiff had made the purchase as her husband’s agent. The record before us, however, leaves no doubt that she was acting solely on her own behalf and that it was she alone who desired and intended to purchase the Brancusi. She had been the artist’s pupil and was his friend. To her, the statue had a personal appeal and value beyond and quite apart from its artistic merit and worth. To her husband, in sharp contrast, the sculpture had little meaning and less value. Even if we were to discount—as the trial judge may have — the impact of the testimony of his friend and business associate that he considered the sculpture as just ‘ ‘ a piece of stone ’ ’, it is clear beyond question that he had not the slightest interest in owning the statue and that it was the plaintiff who was its actual purchaser.
*363 Since his wife had already undertaken to purchase the sculpture, Mr. Bulova’s act of sending his own check to Parke-Bernet in payment of her obligation may only be construed as a gift or a loan to her. Although the former is the more reasonable and probable inference, the fact remains that, even if the payment were intended as a loan, it would not affect her title to the statue. Moreover, if a creditor-debtor relationship was created, it was terminated, and the plaintiff forgiven, by the express provision of the husband’s will discharging her from any and all indebtedness to him. This being so, it follows that the plaintiff is the owner of the Brancusi and entitled to its immediate possession.
We would conclude our opinion at this point were it not for the defendant’s additional contention that, even if we determine that on the present record the plaintiff had established title in herself, the case should, nevertheless, be remitted for a new trial on the ground that competent evidence, bearing on the issue of ownership, was erroneously excluded at the trial. In an effort to prove the husband’s title to the statue, the defendant offered a letter from Mr. Bulova to his lawyer, written in December, 1957 — after the couple had separated—to the effect that the item belonged to him. The defendant also sought to elicit testimony from one of Mr. Bulova’s sisters that she had a conversation with him indicating that he desired to give the sculpture to the Guggenheim Museum. The court, after noting that the evidence would open the door to testimony by the plaintiff concerning the transaction with her husband, sustained an objection and refused to admit either the letter or the conversation into evidence. The defendant now urges, and quite correctly, that the fact that the testimony might have opened the door to the plaintiff did not warrant its exclusion. (CPLR 4519 [formerly Civ. Prac. Act, § 347]; see Martin v. Hillen, 142 N. Y. 140, 144.) However, the evidence was clearly inadmissible as self-serving hearsay. “ [Declarations of a deceased person in his own favor”, it has been held, “are no more competent than those of a living person, particularly when they relate to a past event such as making a gift; and they are unavailing to divest a title.” (Matter of Berardini, 238 App. Div. 433, 435, affd. 263 N. Y. 627; see Marrow v. Moskowitz, *364 255 N. Y. 219, 222.) Since, then, the proffered testimony could not, in any event, be received, there is no basis for a new trial.
The order appealed from should be reversed, with costs in all courts, and judgment granted in favor of the plaintiff against the defendant Guggenheim Foundation declaring the plaintiff the owner of the Brancusi sculpture and directing the said defendant to deliver it to the plaintiff.
Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order reversed, with costs in all courts, and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.

. Their friendship continued until his death in 1957 at the age of 81; she cared for him in his last illness and was with him when he died.

. Alternatively, the complaint demands judgment against the individual defendants for $80,000, the asserted value of the sculpture, in case its possession cannot he given to the plaintiff.

. The Supreme Court Justice who tried the case died before the submission of formal findings of fact, conclusions of law and judgment. Relying upon that circumstance, the plaintiff moved for a new trial as to all the defendants; the motion was granted. Only the Guggenheim Foundation appealed from that order. The Appellate Division reversed and, noting that the trial judge’s oral decision contained all essential findings of fact and conclusions of law, directed judgment for the Foundation (24 A D 2d 944). Judgment was thereupon entered in the County Clerk’s office; on appeal from such judgment, the Appellate Division affirmed, and it is that court’s order of affirmance which is now before us. Proceedings pursuant to the earlier order granting a new trial, which was not appealed by the individual defendants, are being held in abeyance pending the outcome of this appeal.

. Indeed, even if it had been her husband who contracted for the purchase of the sculpture in his wife’s name, the presumption would be that it was intended as a gift and, in the absence of evidence to the contrary, the plaintiff would be considered the legal and equitable owner. (See 5 Scott, Trusts [3d ed., 1967], § 442, p. 3333; Bogert, Trusts and Trustees [2d ed., 1964], § 459, p. 579; 4 Pomeroy, Equity Jurisprudence [5th ed., 1941], § 1039, p. 79; cf. Weigert v. Schlesinger, 150 App. Div. 765, 768-769, affd. 210 N. Y. 573; Scott v. Calladine, 79 Hun 79, 81-82, affd. 145 N. Y. 639.)