Louis B. Heller, J.
Plaintiff wife seeks a divorce or, in the alternative, a separation. She also seeks custody of the children, currently ages 16 and 13; alimony and child support; exclusive possession of the marital home and the contents therein; a declaration that plaintiff and defendant are the joint owners of certain works of art set forth in the complaint, and counsel fees. Trial of the action commenced on April 12, 1976.
Defendant, in his answer, requests sale of the marital premises and an equal division of the net proceeds thereof; disposition of all items of personal property, and return of all the works of art to the defendant as sole owner, or a money judgment for the present value of these items.
With the consent of the parties and their attorneys, I appointed an impartial certified public accountant, Jerome Landau, to conduct an examination into the income and assets of the parties and to examine the books of defendant’s professional corporation, through which the defendant conducts his practice as an orthopedic surgeon.
The court’s purpose in suggesting the appointment of an accountant was to obtain a complete and fair disclosure of financial matters and the income and expense needs of both parties. This was to include the submission by each of statements as to his or her current expenses and projected needs.
Mr. Landau submitted a report of his findings to the court. The report, dated February 18, 1976 (hereinafter sometimes referred to as the "Landau report”), was used by the court in an advisory capacity. It was stipulated that it would be introduced into evidence. Neither party was to be bound by it. Either party could have called his or her own accountant as a witness to dispute any of the findings, but neither side availed himself of this opportunity.
*683 The parties were married in December, 1954 in the City of New York. There are two issue of said marriage, both under 21, to wit, "L” born March 28, 1960 and ”V” born March 19, 1963.
Plaintiff established at the trial that defendant has been guilty of cruel and inhuman treatment towards her. Accordingly, plaintiff is granted a judgment of divorce on this ground.
There being no opposition by the defendant, custody of the two minor children is awarded to the plaintiff wife. The defendant shall have liberal visitation rights, to be agreed upon by the parties and included in the judgment to be settled herein. In the event of their failure to so agree, they shall each submit proposals with respect to visitation as part of the proposed judgment.
I shall now consider in the following order the disputed issues to be resolved in this case: (1) disposition of the works of art; (2) plaintiff’s request for exclusive possession of the marital home; (3) disposition of the personal property and furnishings in the marital home; (4) the amount of alimony and child support to be awarded; and (5) counsel fees.
1. Disposition of the Works of Art
Plaintiff claims 50% ownership in 13 works of fine art and in a collection of miniature military figurines, and sole ownership of a Picasso sculpture of a bull’s head which she contends that the defendant gave her as a gift in 1974 on the occasion of her fortieth birthday. Defendant maintains that plaintiff has no interest in any of said works of art but instead asserts that 10 of the 13 items plus the Picasso sculpture and the miniature military figures are his sole property and that the remaining three were purchased originally by and remain the property of his professional corporation.
It has been stipulated and agreed between the parties and their respective counsel that the court shall use and assign the following values for the works of art:
The professional corporation art (so-called corporate art)
The Picasso bull sculpture The remaining ten works of art plus the miniature military figurine collection
$100,000
15,000
250,000
*684 A. The Law
Section 234 of the Domestic Relations Law authorizes the court to "(1) determine any question as to the title to property arising between the parties, and (2) make such direction, between the parties, concerning the possession of property, as in the court’s discretion justice requires having regard to the circumstances of the case and of the respective parties”. What circumstances are controlling in the determination of personal property in general and as regards works of art in particular?
In the early case of Whiton v Snyder (88 NY 299, 303), the Court of Appeals said that "It has long been the law that the possession of personal property draws with it a presumption of ownership”. The court then distinguished between articles of clothing and furniture and household goods (pp 304-305): "her wearing apparel and ornaments, given by her husband, pass into her personal and separate possession. Such is the intent with which they are given. They are made or selected with that view and for that plain purpose; their very character and use implies a personal gift, and a separate possession in which the husband does not share. Such possession of articles adapted plainly to the wife’s separate and personal use, and not that of the husband or the family generally, and was actually used by her, in the absence of other facts contradicting the inference, must be held to denote her ownership of the property, either as purchased out of her own means, or given to her by her husband or others. As to árticles of a different character, such as furniture and household goods, adapted to the use of and used by the family generally, and in their common possession, a different rule must apply. Although specific articles may be spoken of as the wife’s, or as got for her, the difficulty of establishing an executed gift by showing a delivery, or a separate personal possession, remains. Such cases must stand upon their facts, and can rarely be brought within the range of a presumption of separate ownership”.
Citing the Whiton case, the court in Avnet v Avnet (204 Misc 760, 763) stated: "One thing is clear and that is that no presumption in law exists as to the ownership of such items used in common by husband and wife where they were purchased with the funds of the husband or the wife or with the funds of both of them. In each case title depends on the facts.”
Tausik v Tausik (38 Misc 2d 11, 19-20) goes one step further and holds that:
*685 "No presumption in law exists as to the ownership of household property used in common by husband and wife, merely because such property may have been purchased solely with the funds of one of them [citation omitted].
"Although New York does not subscribe to the principle of 'community property’ (as do Arizona, California, Nevada, Texas and some other States), it is now clear, even here, that, absent affirmative proof of a different intent, household property obtained for the general use, comfort and benefit of both husband and wife, is deemed to be the property of both of them.”
This latter principle was rejected by the trial court in Manheim v Manheim (60 Misc 2d 88, 94, affd 34 AD2d 735) wherein the court instead concluded that: "[T]here is no rule of law that common possession of marital personalty results in joint ownership, that neither payment of consideration nor joint use gives rise to any presumption as to ownership, but that both are facts to be taken into consideration in determining whether the party upon whom rests the burden of proof (here the plaintiff) has sustained his burden of proving his title and consequent right to possession.” The court then referred to both payment and joint use as mere inferences which along with other considerations had to be weighed in determining the rightful ownership of the property. Under the facts before it the court held that title to the household goods, fixtures, furnishings and objects of art was in the plaintiff husband, balancing the plaintiff’s payment for the property, defendant’s admission that the property was not hers, the recognition implicit in defendant’s constant worry about financial security and in the whole course of marriage that the property was plaintiff’s and not jointly owned against the offsetting considerations of the role the defendant wife played in the acquisition of the property and the inference arising from the fact that it was jointly used.
The Manheim case (60 Misc 2d 88, supra) was affirmed without opinion by the Appellate Division, Second Department (34 AD2d 735, supra) and thereafter cited in Kroul v Kroul (42 AD2d 584), a divorce action involving, inter alla, the disposition of three works of art. In Kroul the court (p 585) held that "their [referring to the parties] bare common possession did not result in a joint ownership” but that "the evidence showed that the subject works of art had been purchased by defendant and were his sole property”. Amongst the evidence recited by *686 the court in its opinion is the testimony of the plaintiff wife that defendant had said to her that these works of art belong to him.
On the other side of the coin the Court of Appeals in Lindt v Henshel (25 NY2d 357, 361) proffered that "Although there may be some instances where, as the courts below held, title to personal property may be presumed to vest in the person furnishing the consideration, this is not the rule where the purchase is actually made pursuant to a contract of sale entered into by another for his or her own benefit”. The court, in finding that the plaintiff wife had contracted to purchase the sculpture at an art auction when her bid was accepted by the auctioneer, held that it became hers regardless of the source (i.e., her husband) from whom she obtained the funds to pay for it. In support of this holding, the court noted that her husband "had not the slightest interest in owning the sculpture and that it was the plaintiff who was its actual purchaser” (supra, p 362) and that his "payment of her obligation may only be construed as a gift [the more reasonable and probable inference] or a loan to her” (supra, p 363). The most recent case in the area, involving works of art, is Goldsmith v Goldsmith (52 AD2d 616) wherein the court concluded, "Special Term properly held that, under circumstances, the objects of art were jointly owned by the parties”. The court does not recite these circumstances but Special Term in its decision (Goldsmith v Goldsmith, Sup Ct, Queens County, Index No. 4267/73 [March 4, 1974]) relies on the commingling and intermingling of the parties’ moneys, their different and various bank accounts, trust fund income earnings, stock sales and gifts to such an extent, along with the evidence that the art was insured in the joint names of the plaintiff and defendant, to support its conclusion of joint ownership.
In sum, the current state of the law as regards title and possession of personal property including works of art is consistent with the early rule expressed in Whiton v Snyder (88 NY 299, 304, supra), that common possession cases must be decided on their facts. There is no presumption of joint ownership because of joint possession and use, nor is there a presumption of sole ownership in favor of the spouse who pays the consideration therefor. These are only inferences which must be weighed with all of the other relevant circumstances.
The court will now apply these principles of law as guide *687 lines to the case at bar, dealing separately with the so-called corporate art and the noncorporate or personally owned works of art.
B. Non-Corporate or Personally Owned Art
Based on the testimony of the parties and the many exhibits submitted during the course of the trial, the court concludes that the plaintiff has sustained the burden of establishing that the "personally owned art”, with the exception of the Picasso bull sculpture and the military miniatures (to be discussed infra), is and has always been under the joint ownership, control and possession of the parties. The court does not deem it necessary to deal separately with each work of art but makes the following general findings as to the facts and circumstances which support this conclusion:
1. Parties’ interest in art — Plaintiff’s testimony, which the court accepts in this regard, discloses that she developed an interest in art in childhood when at ages 11, 12 and 13 she was a member and a guide in the Junior Museum of the Metropolitan Museum of Art; that she entered college as a major in fine arts and graduated with a minor in this field; that her interest in art continued during her marriage to the defendant through the medium of art courses and visits to art galleries and museums; and that the first painting acquired by the parties was found by the plaintiff upon one of her visits to an art gallery.
Defendant also has a background in art dating back to his middle teens when he developed an interest in military history and art and began acquiring miniature military figures. In college he was art director of his school year book. He now regards himself as an expert in art.
Thus, unlike the statement of the Court of Appeals in Lindt v Henschel (25 NY2d 357, 362, supra) that the plaintiff-husband therein had not the slightest interest in art, I find that both parties in the instant case have had a long-standing and consuming love and interest in works of art.
2. Parties’ joint involvement in the purchase of art— Manheim v Manheim (60 Misc 2d 88, 94, supra) set forth as an important consideration the role that the defendant wife played in the acquisition of the property. I find that the plaintiff and defendant herein were equally responsible for the works of art acquired by them in that they generally went *688 together to auctions, exhibitions and art galleries in looking for or seeking out items to buy, consulted each other on purchases and arrived at a common judgment. I reject defendant’s testimony that this was not the case.
3. Beneficiary of the art — It is undisputed that all of the works of art hanging in the marital residence were part of the decor of the house. The court finds that the art was purchased for the benefit of both the plaintiff and the defendant (see Lindt v Henshel, 25 NY2d 357, 361-363, supra, where the court emphasized that the statue in question was bought by the defendant wife solely for her own benefit) and does not represent, as the defendant contends, his own collection.
4. Contracts for the purchase of the art — Lindt v Henshel (supra, pp 361, 362), also relies on the fact that the defendant wife alone entered into the contract for the acquisition of the statue. Here there are no formal contracts of sale but simply bills and invoices. These were made out in plaintiff’s or defendant’s name alone, or in both of their names. I find that the name or names on the bills or invoices does not represent any conscious intent to confer ownership on said party or parties, and that this factor is of no consequence in determining ownership in the instant case.
5. Payment for the art — Various sources of funds were used to pay for the works of art — defendant’s earnings, proceeds from sales of art, passbook loans from plaintiff’s parents and bank loans — although it is clear that the defendant’s substantial income was primarily and ultimately responsible for their payment. Further, however, it is undisputed that all of these sources of funds first went into the parties’ joint checking and savings accounts and that the art was actually paid for out of these joint accounts.
The creation of the joint bank accounts established joint tenancies (Banking Law, § 675, subd [a]) and a rebuttable presumption during their joint lives, that, since the funds constituting the deposits were previously the property of the defendant (i.e., his earnings) a gift of one half the deposits was made to the plaintiff (Silbert v Silbert, 22 AD2d 893, 894, affd 16 NY2d 564; Schwartz v Schwartz, 52 AD2d 874). I find that the defendant has not rebutted this presumption.
On the contrary, the testimony reveals that plaintiff was vested with management of the joint accounts; that she wrote almost all of the checks and handled the savings account transactions; that out of these accounts she took care of *689 paying all family bills and expenses not paid by the defendant’s professional corporation; and that there was no restriction upon plaintiff’s right to handle the funds in these accounts and she used them as necessary and as she saw fit. I find that payment of the art from the joint accounts was treated no differently than anything else purchased by the parties for themselves, their children and their home.
Thus, while defendant’s earnings furnished the major consideration for the works of art, there is an off-setting factor of the presumption of a gift to the plaintiff of one half of the funds deposited in their joint bank accounts and used for the purchase of the art.
6. Insurance coverage — It is undisputed that the plaintiff and defendant had from the very beginning maintained fine arts coverage as an endorsement to their home owners insurance. Since the home owners policy was issued and retained in the joint names of the plaintiff and defendant, the works of art were also insured in their joint names, a fact relied upon by the lower court in Goldsmith v Goldsmith (Sup Ct, Queens County, Index No. 4267/73, supra) in finding joint ownership of the objects of art involved in that case.
7. Unlike Manheim v Manheim (60 Misc 2d 95, affd 34 AD2d 735, supra) and Kroul v Kroul (42 AD2d 584, supra), there is no testimony herein by the plaintiff that the works of art are her husband’s and not hers, or that the defendant ever said to her that the art belongs to him.
In conclusion, I hold that under all of the above circumstances, the works of art are jointly owned by the parties (Goldsmith v Goldsmith, 52 AD2d 616, supra).
Turning now to the two exceptions — the military miniatures and the Picasso bull sculpture — I hold that the miniatures are owned solely by the defendant and the sculpture solely by the plaintiff. The testimony with regard to the military miniatures clearly indicates an intention that they were to be regarded as belonging to the defendant. This collection was begun by him prior to the marriage and continued thereafter. Plaintiff did not exhibit any interest or involvement in the miniatures. Purchases of them were therefore made solely for defendant’s benefit and plaintiff in her testimony admits in fact that they belong to him.
The Picasso bull, which I find is owned by the plaintiff, was given to her by the defendant as a birthday present. Her sister testified to this fact and defendant admits that the gift *690 occurred as plaintiff and her sister stated. Clearly, the statue was intended to be the plaintiff’s by virtue of the gift.
C. Corporate Art
The so-called corporate art consists of three items — a painting by Leger, a painting by Braque and a line drawing by Picasso, with an aggregate stipulated value of $100,000. The fourth item a Degas bronze, is not in issue as it was sold long before the commencement of this action but will nevertheless be discussed briefly.
Plaintiff maintains that these works of art should be regarded in the same manner as the "personally owned art”, i.e., as being jointly owned by the parties. She claims that the only difference between the two categories is that the corporate art was acquired through the use of funds borrowed from defendant’s professional corporation.
Defendant contends that the items were purchased on behalf of his corporation as corporate assets and should be regarded as such by the court.
Weighing all of the above circumstances surrounding the acquisition and subsequent events involving the corporate art, the court finds that there are several indicia of corporate ownership — the corporation checks used in payment thereof; the bills of sale; the insurance coverage and correspondence pertaining thereto; the balance sheet treatment of these items as corporate assets — which are offset by the inference that some of the payments came from the parties’ joint checking account; the parties’ probable joint involvement in acquiring the art, and the fact that they were hung in their home and not in the offices of the corporation, or in a vault under corporate dominion.
In deciding the equitable disposition of these works of art, the court will therefore use as a major criterion the payments made thereon. Did the payments, in fact, come from the corporation or did they emanate from the parties through their joint checking account and become laundered through the corporation so that corporate checks were used for payment? If the former, then the corporation will be regarded as the true owner to the extent thereof; if the latter, the corporation will be treated as only the nominal owner with beneficial ownership resting in the parties to the extent of those pay *691 ments so laundered. On this basis, I find and conclude as follows:
1. The Leger was almost entirely obtained with personal funds and I therefore hold that the painting is owned jointly by the parties and should be divided equally between them.
2. The Braque was acquired with $15,000 of funds which originally came from the parties’ joint checking account. This painting is therefore jointly owned to the extent of $15,000; the remainder of its value is owned by the defendant’s professional corporation.
3. The Picasso was purchased with $4,000 of funds from the parties’ joint checking account. To this extent the drawing is owned in the joint names of the parties; the corporation is the owner of the balance of its value.
The parties, with the help of their competent counsel, shall, within 60 days from the date of the judgment to be settled herein, agree upon an equitable disposition of the works of art, both personal and so-called corporate, in accordance with the conclusions set forth above. Should the parties fail to reach an agreement, the court directs that the entire art collection be sold at public auction by a reputable art dealer to be designated by the court. The court will accept recommendations from the parties as to who shall conduct the auction and whether upset prices should be set, and if so, in what amounts.
The proceeds derived from the auction sale, less commissions, shall be divided between the parties as follows: Equally as regards all of the "personally owned” art and the Leger painting; in accordance with the above findings as regards the Braque and the Picasso. If there exist any outstanding loans obtained by the parties for the purchase of the art, the balance as of the date of this judgment shall be shared equally by the parties so as to reduce the net proceeds to be divided between them.
Excepted from the above disposition are the Picasso Bull and the military miniatures, which are awarded to the plaintiff and defendant, respectively, as their sole property. These two items, if not now in the possession of the proper party, are to be forthwith turned over to the indicated owner.
2. Exclusive Possession of the Marital Home
Plaintiff seeks exclusive possession of the marital home. Her *692 attorney argues in his posttrial memoranda that the house represents to plaintiff and her children "a haven which would be difficult, if not impossible, to replace in a personal sense” and that "a forced sale of the marital home would be detrimental to the health and welfare of the plaintiff and to the present best interest of the children.”
Defendant on the other hand requests that the court direct a sale of the marital house, so that he can receive his one-half share of the net proceeds for his own needs and purposes.
Neither party offered any testimony to support their respective positions. However, this does not prevent the court from exercising its discretion pursuant to section 234 of the Domestic Relations Law and either award exclusive possession of the marital house to the plaintiff or order the sale of the home and distribution of the net proceeds to both parties, as "justice requires having regard to the circumstances of the case and of the respective parties”. (Domestic Relations Law, § 234; Ripp v Ripp, 38 AD2d 65, affd 32 NY2d 755.)
This determination — i.e., exclusive possession or sale — by a matrimonial court, is based mostly upon a balancing of the realistic needs of the spouses and any infant issue of the marriage (Wages v Wages, 38 AD2d 968). Some of the circumstances to be weighed by the court in making this decision include: "the relative financial resources of the parties, the need of either party for occupancy of the home, and the duration of the exclusive possession” — as well as — "the cost of maintaining the home in comparison to the benefits received, the financial hardship suffered by either party by the refusal to authorize a sale of the property, the presence or absence of children to enjoy the use of the home, or the size and expansiveness of the home in relation to the expected use” (Ripp v Ripp, 38 AD2d 65, 69, supra).
Based on the exigencies of this case, I find that it would be in the best interests of the plaintiff and her two children if they were to be permitted to remain in the marital house until the youngest of the children attains the age of 21. The condition of plaintiff’s physical and mental health gives the court concern about the impact her removal from the house would have upon her. The children too have lived in the house now for almost 10 years and I see no reason for depriving them of their continued enjoyment of same. Retention of exclusive possession of the house is thus warranted, since it is needed as a home for the plaintiff and the children (Bonardi v *693 Bonardi, 55 AD2d 613), and is consistent with maintaining the plaintiffs preseparation standard of living.
From a financial point of view, I find that the defendant will not suffer any hardship if the house is not now sold. He can afford to maintain his family in this accommodation, in view of his current substantial earnings as a prestigious surgeon.
As was aptly stated in Rosenstiel v Rosenstiel (20 AD2d 71, 78 [concurring opn]), "the courts are empowered to require the husband to support the wife and this includes providing a home for her. In most instances the practical and expedient method of requiring the husband to provide shelter is to allow the wife to occupy the premises previously used as a marital home.”
Accordingly, the plaintiff is awarded sole and exclusive possession of the marital house until the parties’ youngest daughter reaches the age of 21 years, or marries before then, with the older daughter having attained the age of 21. The defendant shall be liable for all taxes, carrying charges, utilities, maintenance and upkeep of the home, said sums to be included in the amount of alimony to be awarded the wife (infra).
3. Exclusive Possession of the Contents of the Marital Home
Consistent and coextensive with the granting of exclusive occupancy of the marital home to the plaintiff, the court also awards her exclusive possession of the contents of the house. Excepted from this holding are the following items which are hereby permanently awarded to the defendant: (a) the contents of his den/office in the marital home as it was when he left, including the antique desk, art books, military history and marine books, a small antique English revolving book-stand, etc.; (b) the Empire cabinet which was purchased and used to display his miniature figures; (c) a small antique brass and glass box used to display miniature figures of Louis XVI and family, with contents; (d) A Larry Rivers work of art given to the defendant by the artist.
[Material with respect to alimony and child support omitted for purposes of publication.]
5. Counsel Fees
The last issue to be determined by the court in this action *694 relates to the application made by the attorney for the plaintiff for counsel fees. Counsel for the respective parties have submitted affidavits in compliance with the court’s request that its determination be based thereon without the necessity of any further hearing.
Plaintiff’s attorney requests counsel fees in the amount of $35,000, reimbursement of out-of-pocket disbursements in the sum of $1,442.79 (including a $400 fee for services rendered by an accounting consultant), and separate accounting fees of $2,400 for services rendered by a certified public accounting firm.
Defendant’s attorney interposes a number of objections, the more substantial of which will now be considered by the court:
1. Defendant urges the court to deny the counsel fee request in toto at this time but with leave granted to plaintiff’s counsel to commence a plenary and separate action against the defendant for legal services rendered herein. The court rejects this proposition. "While the common law action continues to be a remedy for the recovery of such 'necessaries’ as counsel fees [citation omitted], the forced institution of such suits is not to be encouraged when a trial court having jurisdiction over the parties is capable of rendering an informed decision, with due regard for the facts and the financial circumstances of the parties. The additional expense and delay inherent in the commencement of a separate action militate against its use here.” (Roscini v Roscini, 45 AD2d 254, 257.) Moreover, a separate plenary action needlessly adds to the burden upon the courts (Ellis v Shapiro, 56 Misc 2d 379, 383, affd 57 Misc 2d 633).
2. Defendant maintains that plaintiff is not entitled to counsel fees for that portion of legal services attributable to her cause of action seeking one-half ownership of the works of art. Defendant’s contention is that this involves a nonmatrimonial cause of action for which there is no statutory authority awarding legal fees.
Plaintiff’s claim to counsel fees is founded upon section 237 of the Domestic Relations Law which provides in pertinent part as follows:
"§ 237. Counsel fees and expenses.
"(a) In any action or proceeding brought * * * (3) for a divorce * * * the court may direct the husband * * * to pay such sum or sums of money to enable the wife to carry on or *695 defend the action or proceeding as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties.”
This being a divorce action, the court is clearly authorized to award counsel fees to the plaintiff. In the court’s opinion, the award is intended to encompass not only legal services rendered for the primary relief, i.e., the divorce itself, but also for the incidental relief such as alimony, child support, etc. Any other construction of section 237 would impose an undue and unwarranted limitation on the amount of legal fees recoverable by a wife in a divorce or other matrimonial action. The language of the section itself does not require the imposition of any such restriction as it reads in terms of "any action” for divorce, etc. and does not limit itself to only the divorce relief.
Accordingly, I conclude that plaintiff is entitled to counsel fees for legal services rendered with regard to the divorce and to all of the incidental relief sought in connection therewith, including her claimed interest in the works of art. Determining the title or possession to marital property pursuant to section 234 of the Domestic Relations Law is an integral aspect of the court’s function in a matrimonial action and should be regarded no differently than the other incidental relief requested by the plaintiff herein, i.e., alimony and child support, etc., for purposes of awarding counsel fees.
The cases cited by the defendant (Blaine v Blaine, 20 AD2d 903; Silbert v Silbert, 22 AD2d 893, affd 16 NY2d 564; Lambert v Lambert, 45 AD2d 715; Marshall v Marshall, 48 AD2d 759) do not require a contrary conclusion. None of these cases involved counsel fees relating to a claim by a wife in a divorce action for incidental relief under section 234 of the Domestic Relations Law; the Lambert case dealt with a counsel fee sought by the wife in opposing an appeal where the only cause of action in question (i.e., distribution of a joint bank account), not the divorce itself, was apparently being considered on appeal.
3. The amount of the fee requested by plaintiff’s attorney is attacked by defendant’s counsel as exorbitant. He argues that it is without factual foundation or basis in that plaintiff’s counsel did not maintain time records to support actual time spent on the case. Plaintiff’s counsel’s estimate of 1,274 hours is therefore nothing more than a "guesstimate,” according to defendant’s attorney, and should be given no probative value. *696 Moreover, he claims that the many hours of work performed by the nonlawyer assistant to plaintiff’s counsel are lumped together with the attorney’s services, without a separate breakdown, and is apparently being calculated at the same dollar rate. Plaintiff’s counsel denies this, stating that it is only his time that is reflected in the estimate.
Although the lack of adequate time records makes evaluation more difficult, the court, having devoted a considerable amount of time to this case, is in a position to make a fair determination based upon the skill, experience and background of counsel, the nature of the services rendered, the difficulty and complexity of the issues of fact and law involved in the case, as well as the time actually spent on trial. (Lowe v Lowe, 28 AD2d 212, 213, affd 21 NY2d 965; Rosner v Rosner, 82 Misc 2d 603, 619.) Relating these factors herein, I find that the attorney for the plaintiff, like counsel for the defendant, is a skilled and experienced member of the matrimonial bar. The extent of the services he was required to render in this action, as credibly set forth in his affidavit, is broad in scope and corresponds with the history and chronology of the case. The issues of fact relating to the many works of art and to the establishment of a proper basis for alimony and child support were considerable and obviously required a great deal of time in ascertaining them in the first instance, preparing the issues for trial, presenting them during the course of trial and setting them forth for the court in the posttrial memoranda.
Having found all of this, what then is a fair and reasonable sum? While section 237 of the Domestic Relations Law states that it is a matter of discretion with the Trial Judge, this court observes the great frequency with which the various Appellate Divisions have modified, generally downwards, and usually without a statement of reason, the "discretionary” amount of counsel fees set by matrimonial Judges throughout the State. Typical is the recently reported case of Nalven v Nalven (54 AD2d 925), which reduced the fee awarded plaintiff wife in a divorce judgment from $10,000 to $7,500, stating only that, "The counsel fee was excessive to the extent indicated herein.”
Apparently, the appellate divisions, although they have not heard the case in the first instance and have only the cold record before them, believe their exercise of discretion to be wiser than that of the Trial Judges who were able to observe firsthand the performance of counsel in the presentation of his *697 cause. Perhaps, the trial courts are guilty of being too generous when determining the award of counsel fees. Regardless, in the absence of any quantitative guidance from the higher courts, I, like my fellow brethren, will have to continue to exercise the discretion which my experience in these cases warrants.
Accordingly, this court concludes that a fair and reasonable fee for legal services rendered by the attorney for the plaintiff is $25,000. This sum is inclusive of $1,442.79 in disbursements and of the $2,400 fee for accounting services rendered to the attorney by the certified public accounting firm, which fee has not yet been paid.
The defendant is directed to pay to the said attorney for plaintiff $25,000 in counsel fees, with payment to be made in two installments, to wit, one half thereof or $12,500 to be paid within 60 days after entry of judgment herein, and the balance of $12,500 to be paid within 60 days thereafter. The $2,400 fee to the certified public accounting firm shall be paid by plaintiff’s attorney out of the first $12,500 installment received by him.