OPINION OF THE COURT
George Friedman, J.
Plaintiffs are the estate of a deceased Housing Authority police officer and another officer who survived a collision between a marked Housing Authority patrol car and a New York City Emergency Medical Service (EMS) ambulance near Tremont Avenue in Bronx County on June 16, 1988. This action was tried before the late Justice Modesto and a jury commencing on January 3, 1994. At trial, in order to satisfy the mandates of General Municipal Law § 205-e, plaintiffs sought to show that the EMS ambulance was being driven in *420 violation of EMS regulations* in that, among other things, it was being operated as an emergency vehicle without having been authorized to do so.
After lengthy and extensive testimony, the matter was submitted to the jury, which was charged to return a special verdict. The court’s charge and the verdict sheet required the jury to find that any regulatory violation of the EMS Operating Guide was a "proximate cause” of plaintiffs’ injuries in order for the defendants to be found liable. The court, in the charge as a whole, defined "proximate cause” as having two distinct and separate meanings. The court stated, in pertinent part, that:
"They also have to prove — well, this is where we start getting complicated. Plunkett and Peaco have to prove violation under 205 of the General Municipal Law. If they do that, they also have to prove proximate cause against EMS, and proximate cause under that particular statute is defined differently than it is under the definition which I gave you for negligence generally under the second — under the third party claim.
"Under the General Municipal Law claim, proximate cause means only a practical connection between the injury sustained and the violation of the statute or regulation. So it is not a substantial connection. It is just a reasonable or practical connection under the General Municipal Law claim.
"So the definition, and again, if you have any confusion about that, because you’re only hearing it for the first time now, the definition, both the plaintiffs Plunkett and Peaco and the EMS have to prove proximate cause on their case in order to prevail.”
The jury’s verdict sheet required the jury to respond whether the acts of defendants were the "proximate cause” of the accident; the words "practical connection” or similar words do not appear on the verdict sheet.
The jury returned a verdict finding that the ambulance had negligently failed to comply with the provisions of the EMS Operating Guide, but that this regulatory violation was not a proximate cause of the plaintiffs’ injuries.
Plaintiffs now move to set aside the verdict pursuant to *421 CPLR 4404. Plaintiffs’ sole argument is that the court’s charge and verdict sheet were erroneous in that the court employed the language "proximate cause” with regard to the standard under General Municipal Law § 205-e.
Justice Modesto died after the submission of the motion to set aside the verdict. By letter to his law clerk dated October 8, "1995” (sic — the letter was undisputedly drafted in 1994), the late Justice directed, "Give [the Hon. Burton B.] Roberts the Plunkett after trial motion papers so that he can have someone in the pool decide it. The motion should be denied for the reasons stated in the Defendant’s papers.” A memorandum decision was prepared by the Justice’s law clerk in accordance with the late Justice’s instructions and delivered to the home of the Justice. This draft memorandum, as well as a second copy, was delivered to the Justice’s home. Both were returned to the Justice’s chambers, unsigned, for reasons which cannot now be discovered.
The motion has now been referred to me for determination as the successor Justice presiding at Trial Term, Part 10. As a threshold matter, it must be determined whether I may execute an order denying the motion as a ministerial act carrying out Justice Modesto’s intent pursuant to CPLR 9002.
CPLR 9002 provides, in pertinent part, that after the death of a Judge "following his verdict, report, decision or determination of a motion * * * any other judge of the same court may, on the application of a party, give effect to such verdict, report, decision or determination and make and sign an appropriate order or judgment based thereon.” It has been held that this section authorizes "merely ministerial acts” which may be necessary to carry into effect matters already determined in judicial proceedings (8 Weinstein-Korn-Miller, NY Civ Prac fl 9002.01).
The cases are not particularly enlightening as to the nature of the prior determination which will permit further proceedings to be entered thereon pursuant to CPLR 9002. It has been held in dicta that an unsigned memorandum decision is insufficient (Schammel v Schammel, 161 AD2d 407, lv dismissed 76 NY2d 844), although the contrary result has been reached where the parties relied on the first unsigned memorandum in moving for reconsideration, and where the clerk’s minute book reflected that a second determination on reargument adhering to the first had been issued (Rosenshein v Guillen, 92 Misc 2d 217).
*422 It has been held that in a nonjury case an oral decision dictated on the record would support the entry of judgment following the death of the Trial Justice (Lindt v Guggenheim Found., 24 AD2d 944, revd on other grounds 25 NY2d 357), as would a signed memorandum decision which recited "settle order” (Matter of New York State Labor Relations Bd. v America Marble Co., 13 Misc 2d 877, affd 7 AD2d 907; see also, Pivnick v Fraley Realty Corp., 157 AD2d 466 [proper for Justice substituted after death of another Justice to resettle judgment to conform to earlier Justice’s decision]).
On the other end of the spectrum, a letter from a collection officer is not evidence that a retired Family Court Judge had issued an order suspending child support obligations (Matter of Ursula Holm-Beer v Holm, 186 AD2d 1084). Similarly, the affidavit of a former Justice’s law clerk that a certain Justice had made a final determination was not sufficient to bind a successor Justice (Nowak v Sherman, 198 AD2d 842, rearg denied App Div, 4th Dept, Mar. 30, 1994).
The cases cited above generally turn on the reliability of the evidence that the deceased or incapacitated Judge had reached a final determination. As noted above, even unsigned determinations have been given effect where the facts warrant that result (Rosenshein v Guillen, supra). Here, the court’s note to its court attorney was signed, and I have no doubt as to its authenticity. It is a clear indication that the Judge was resolved to deny the posttrial motion. Yet the informal resolve of a Justice to render a determination, or his direction to his staff to write a decision in a certain manner, is not tantamount to a final "decision or determination” which is binding in a court proceeding. The Trial Justice had not rendered a decision on the record, had not executed any document which was intended to have a legal effect, and had not released any determination. The late Justice was free to change his mind as to the final disposition of the motion — his direction to his staff was not a final resolution of the question. There is no doubt that the writing which was produced by the Justice’s staff was never ultimately adopted by him. In short, the instruction by the late Justice was not a jurai act, and could not have the consequences attendant upon the issuance of a "decision or determination” which may be recognized as an official act.
The next issue which the court must resolve is whether the court has the authority to determine the motion of its own *423 accord. In this regard, it is noted that all parties have not consented to our determination of the motion.
In DeGraff Moffly/Gen. Contrs. v Krolick (194 AD2d 964), a motion was made by plaintiff to extend his time to comply with a conditional order of preclusion issued in connection with discovery matters. The Justice assigned to the motion died while the motion was pending. The Court held: "Under the Individual Assignment System, the death or disability of an assigned Judge merely results in reassignment of the case to another Judge, who then has full authority to perform the functions of the assigned Judge, including determination of pending motions (see, 22 NYCRR 202.3 [a], [c] [1], [4], [5]). Supreme Court’s error in relying upon CPLR 9002 * * * does not alter our view.” (Supra, at 965.)
The foregoing precedent appears to support my authority to determine this matter on the merits. Nor have I been made aware of any argument of this motion which occurred before Justice Modesto which would preclude my consideration of the matter under Judiciary Law § 21, which precludes Trial Justices from determining motions as to which they have not taken part in the oral argument.
Turning now to the merits of plaintiffs motion to set aside the verdict, it is clear, at the outset, that plaintiff preserved his objection both to the court’s charge and to the form of the verdict sheet by timely objection. The written papers submitted on the motion to set aside the verdict contained excerpts from the trial during which counsel for plaintiff stated "I think proximate cause in those two questions [on the verdict sheet] should be changed. It should be reasonable connection” (plaintiffs mem of law, exhibit B, at 8).
The instant motion raises only issues of law, and no issues are argued which require this court to weigh conflicting testimony or to delve into matters of credibility. In other words, the issues raised on this motion concern only the language of the court’s charge and the burden of proof under General Municipal Law § 205-e. In this case, it appears to be settled that a plaintiff seeking redress under General Municipal Law § 205-e need only demonstrate a "practical or reasonable connection” between the injuries sustained and the violation of the statute or regulation and need not demonstrate that same degree of proximate cause which generally applies in a tort action. (Lusenskas v Axelrod, 183 AD2d 244 [1st Dept 1992], lv dismissed 81 NY2d 300.)
*424 The court in charging the jury employed the term "proximate cause” to signify both the common-law standard which applied in the third-party action as well as that of "practical or reasonable connection” which applies under General Municipal Law § 205-e. While a lawyer trained and familiar with these concepts might be able to comprehend these distinctions, the jury could not have been expected to understand that the Trial Justice meant the same word to convey principles having two very distinct and separate meanings. "It is well settled that a charge that confuses and creates doubts as to the principles of law to be applied requires a new trial; a charge must not contain contradictory and inadequate statements of law (see, Biener v City of New York, 47 AD2d 520).” (Cumbo v Valente, 118 AD2d 679.)
It is this court’s belief that the court’s charge to the jury was confusing and contradictory, and that the verdict must be set aside. The court observes that the jury, although it found the ambulance driver’s negligent failure to comply with the EMS Operating Guide was not a "proximate cause” of the injuries, went on to consider the question of comparative negligence; it did so in contravention of the instruction on the verdict sheet to proceed no further and return the verdict. This is further evidence of the jury’s state of confusion, all of which warrants a new trial. Accordingly, the motion to set aside the verdict is granted and the matter is referred to the presiding Justice of IA-3 to be set down for a new trial.

 Plaintiffs also sought to show that the operator of the ambulance violated various provisions of the Vehicle and Traffic Law. The jury, in its special verdict, rejected these theories, and no argument is now raised with respect to them.