[51 NYS3d 66]

Anonymous, Respondent, v Anonymous, Appellant.

First Department, April 4, 2017

**APPEARANCES OF COUNSEL**

*Cohen Clair Lans Greifer Thorpe & Rottenstreich LLP*, New York City (*Bernard E. Clair, Jad Greifer* and *Benjamin A. Lilien* of counsel), for appellant.

*Alter Wolff & Foley LLP*, New York City (*Alan Feigenbaum, Eleanor B. Alter* and *Adam John Wolff* of counsel), for respondent.

**OPINION OF THE COURT**

WEBBER, J.

In this appeal we are called upon to rule on the appropriate method of determining ownership of valuable works of art in the parties' art collection.

The parties were married on May 5, 1992. Plaintiff husband commenced the instant matrimonial action on May 6, 2014, claiming separate ownership of tens of millions of dollars' worth of art, while defendant wife claims the art was jointly owned. The wife also claims to separately own four specified works of art purportedly worth a total of approximately $22 million.

The parties executed a prenuptial agreement on April 21, 1992. The prenuptial agreement does not specifically address how the parties should divide their art collection upon dissolution of the marriage. It provides that any property owned on the date of execution of the prenuptial agreement, April 21, 1992, or "hereafter . . . acquired" by one party remains that party's separate property. It provides that "[n]o contributions of either party to the care, maintenance, improvement, custody or repair of the separate property of the other party . . . shall in any way alter or convert any of such property . . . to marital property."

The prenuptial agreement further provides that "any property acquired after the date of the marriage that is jointly held in the names of both parties" shall, upon dissolution of the marriage—which occurred on March 25, 2014—be divided equally between the parties. Under the heading, Non-Marital Property, the agreement provides:

> "No property hereafter acquired by the parties or by either of them . . . shall constitute marital property . . . unless (a) pursuant to a subscribed and acknowledged written agreement, the parties expressly designate said property as marital property . . . or (b) title to said property is jointly held in the names of both parties."

During the marriage, the parties agreed to acquire certain art as a joint collection, including pieces acquired through Art Advisory Services, Luhring Augustine, and The Kitchen. The wife claims that all art acquired through those vendors was jointly held. The husband claims that there was no blanket agreement that all pieces from those vendors would be considered marital property. Rather, he states that he relied on the prenuptial agreement and purchased certain works solely in his name when he wanted them to remain his separate property.

The husband moved, inter alia, for a declaratory judgment that, "consistent with the Prenuptial Agreement, the title to the art purchased during the marriage determines whether it is marital or separate property, regardless of the source of funds used to acquire it or the alleged intent behind the purchase." He argued that title should be determined based solely on the invoice or bill of sale.

The motion court construed the prenuptial agreement to provide that any art purchased solely in one party's name remained that party's separate property (*see Van Kipnis v Van Kipnis*, 11 NY3d 573, 577 [2008]; *Strong v Dubin*, 75 AD3d 66, 68-69 [1st Dept 2010]) and relied on the invoices as proof of whether the art was jointly or individually held. We conclude, to the contrary, that invoices, standing alone, may not be regarded as evidence of title or ownership of the art.

An invoice is defined as "[a] list of goods sent or services provided, with a statement of the sum due for these" (Oxford Living Dictionaries, invoice [https://en.oxforddictionaries.com/definition/invoice]).

> "An invoice . . . is not a bill of sale, nor is it evidence of a sale. It is a mere detailed statement of the nature, quantity, or cost of the goods, or price of the things invoiced, and it is as appropriate to a bailment as a sale. Hence, standing alone, it is never regarded as evidence of title" (*Sturm v Boker*, 150 US 312, 328 [1893] [internal quotation marks omitted]).

An invoice cannot be said to be dispositive of ownership. The purpose of the invoice is not to identify the titled owner. Moreover, there is always the potential unreliability of the information contained on the invoice. For example, for one reason or another, the price of the item(s) purchased may be inflated or deflated or the description of the merchandise or services rendered may be inaccurate or distorted.

The unreliability of an invoice as sole proof of title is evidenced by various invoices in the record before us. The parties concede that some of the invoices are inconsistent on their face, in that the name of the only party listed is not consistent with the name of that party's account with the auction house of purchase or conflicts with the party to whom the item purchased should have been shipped. For example, the wife points to a jointly acquired and owned Jeff Koons painting, "the Empire State of Scotch, Dewars," the invoice for which lists only the husband's name.

The husband's reliance upon *Tajan v Pavia & Harcourt* (257 AD2d 299 [1st Dept 1999], *lv dismissed in part, denied in part* 94 NY2d 837 [1999]) in support of his argument that title should be determined based solely on the invoice or bill of sale is misplaced. In *Tajan*, the plaintiff sued an attorney administrator of an estate and his firm for negligent misrepresentation. There, a valuable painting was stolen from the home of Enzo Colombo, an Italian citizen. Although Mr. Colombo left a will, he died intestate as to this painting. The painting reappeared some years later at Christie's auction house in New York. Mr. Colombo's heirs instituted a turnover proceeding in Surrogate's Court, New York County, and the defendant attorney was appointed as ancillary administrator of Mr. Colombo's estate in the United States. Ultimately, Davide Colombo was declared the sole heir, and obtained sole title to the painting. The plaintiff, relying upon an opinion by the defendant assuring them of Davide's good title, purchased the painting and then consigned it to another entity. The Italian government seized the painting on the ground that Davide had

committed the crime of illegal exportation by not returning the painting to Italy.

In analyzing who held good title to the painting, this Court noted that the bill of sale transferring the painting to the buyer "warranted the painting's good title" (257 AD2d at 303). In determining who held valid title to the painting when the defendant attorney administrator issued the opinion letter, this Court did not, as argued by the husband, rely upon the bill of sale. Instead, it considered the parties' admissions and releases of claims by others against the painting (*id.* at 304).

Conversely, the wife cites *Lindt v Henshel* (25 NY2d 357 [1969]) and *Susan W. v Martin W.* (89 Misc 2d 681 [Sup Ct, Kings County 1977]). While neither case involved a prenuptial agreement, they both offer some guidance as to the factors that in addition to the name listed on the invoice, should be considered in determining title. In *Lindt*, the Court of Appeals held that a sculpture belonged to the wife, rather than the husband's estate, because the wife, "on her own initiative and without any prior arrangement with her husband, attended the auction and bought the statue" (25 NY2d at 362). The Court noted also that "[t]he bid card was signed by her, the price was charged to her account and the invoice was rendered and sent to her" (*id.*). Thus, in *Lindt*, the Court appears to recognize that the person to whom an invoice is rendered, while relevant to the issue of title, is not, in and of itself, dispositive, and that therefore other factors are also relevant and should be considered. In *Susan W. v Martin W.*, the court, when faced with the same issue, looked at the parties' interest in art, joint involvement in the purchase of art by attending auctions and exhibits together to seek items to buy, and payment for the art from joint accounts (89 Misc 2d at 687-688).

We conclude that title to personalty cannot be determined by relying solely upon an invoice. In determining title to the artwork in question, all the facts and circumstances of the acquisition and indicia of ownership must also be considered.

Accordingly, the order of the Supreme Court, New York County (Ellen Gesmer, J.), entered October 19, 2015, which, to the extent appealed from as limited by the briefs, declared that art purchased in either party's sole name during the marriage, regardless of vendor, is that party's separate property pursuant to the terms of the prenuptial agreement, should be reversed, on the law, without costs, the declaration vacated, and the matter remanded for further proceedings, including

discovery and an evidentiary hearing to determine the ownership of the disputed art. The order of the same court (Deborah A. Kaplan, J.), entered March 15, 2016, which, to the extent appealed from as limited by the briefs, upon reargument, modified the order entered October 19, 2015 only to the extent of ordering discovery and a hearing to determine ownership of works of art, including the four specified works of art, purchased during the marriage for which the purchase invoice is on its face ambiguous or inconsistent, should be modified, on the law, to direct discovery and a hearing to determine ownership of all disputed works of art purchased during the marriage, and otherwise affirmed, without costs.

ACOSTA, J.P., MAZZARELLI and MANZANET-DANIELS, JJ., concur.

Order, Supreme Court, New York County, entered October 19, 2015, reversed, on the law, without costs, the declaration vacated, and the matter remanded for further proceedings, including discovery and an evidentiary hearing to determine the ownership of the disputed art. Order, same court, entered March 15, 2016, modified, on the law, to direct discovery and a hearing to determine ownership of all disputed works of art purchased during the marriage, and otherwise affirmed, without costs.